## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**JAMES CROSBY,**                                   **CASE NO.:**

      **Plaintiff,**

**v.**

**KURT A. HOFFMAN, in his official
capacity as SHERIFF of SARASOTA
COUNTY, FLORIDA, and
SCOTT HUBER, individually,**

      **Defendant.**

_____/

## COMPLAINT

Plaintiff, JAMES CROSBY, hereby sues Defendant, KURT A. HOFFMAN, in his official capacity as SHERIFF, SARASOTA COUNTY, FLORIDA and SCOTT HUBER, individually, and alleges:

## NATURE OF THE ACTION

1.     This is a civil action seeking monetary damages, declaratory judgment, and legal, equitable, and injunctive relief against Defendant. This is an action brought under the common law of the State of Florida, and the Fourteenth Amendment for procedural due process violations and the First Amendment to the Unites States Constitution brought through 42 U.S.C. §1983. Attorneys fees are sought under 42 U.S.C. §1988.

2.    This is an action involving claims which are, individually, in excess of Seventy Five Thousand Dollars ($75,000).

## PARTIES

3.    At all times pertinent hereto, Plaintiff, JAMES CROSBY, has been a resident of MANATEE, County, FL. He is *sui juris*.

4.    At all times pertinent hereto, Defendant, KURT A. HOFFMAN, in his official capacity as SHERIFF of SARASOTA COUNTY, Florida (hereinafter "SHERIFF") has been organized and existing under the laws of Florida as a law enforcement agency known as the SARASOTA COUNTY SHERIFF'S OFFICE ("SCSO") and is located in SARASOTA COUNTY, Florida. It is *sui juris*.

5.    At all times pertinent hereto, Defendant, SCOTT HUBER, individually, was a resident of the State of Florida and was employed by Defendant SCSO, as a SERGEANT. He is *sui juris*.

## CONDITIONS PRECEDENT

6.    Plaintiff has satisfied all conditions precedent to bringing this action, if any.

## STATEMENT OF THE ULTIMATE FACTS

7.    Plaintiff was employed with the Sheriff of SCSO from in or around April 2015 to in or around May 2020 as a Deputy/Detective. During his employment, Sergeant Scott Huber was Plaintiff's supervisor.

8.     Plaintiff held a stellar work performance under Sergeant Huber per his performance evaluations, and received numerous positive reviews, the Meritorious Award in 2019, the Heroic Achievement Award in 2016, and employee of the month multiple times during his employment with SCSO.

9.     During his employment with Defendant, Plaintiff reported to his upper level supervisors a belief that Huber was either drinking on the job or was hung over, thus adversely affecting his ability to perform his job duties. This feeling was shared among other employees within Huber's unit. It was not part of Plaintiff's ordinary job duties to report Huber's drinking to his supervisors. At the time that Plaintiff left the Sheriff's Office, Huber was apparently unaware that Plaintiff was the person who reported his drinking to other supervisors within Defendant but he learned that after Plaintiff's departure from Defendant Sheriff.

10.    In or around May 2020, Plaintiff left the Sheriff's Office to further his education and care for his son, who was diagnosed with a brain tumor and required extensive care. At the time he left the employ of the Defendant Sheriff, there were no disciplinary actions pending nor none contemplated. Plaintiff left the Sheriff in good standing.

11.    In or around January 2021 through at least July 2024, Plaintiff applied for several highly competitive federal government positions for which he was qualified, having completed a Doctorate in Criminal Justice. This advanced degree,

3

which is held by fewer than 0.1% of law enforcement officers nationwide, was pursued with the expectation of federal service that would have provided loan relief and other benefits.

12. During the application and background investigation process, however, Sergeant Huber knowingly provided false and defamatory information to federal background investigators concerning Plaintiff's work history and character. Specifically, Huber falsely stated that Plaintiff did not work well with others, missed meetings, failed to give full effort in his work performance, and engaged in other derogatory conduct. These statements were directly contradicted by Plaintiff's documented and signed performance reviews under Huber's own supervision, which consistently reflected excellent performance.

13. Upon information and belief, Huber's false statements were communicated to the federal agencies to which Plaintiff applied and directly resulted in Plaintiff being denied employment opportunities for which he was otherwise qualified.

14. On or around May 12, 2022, Plaintiff brought these concerns to the Defendant Sheriff, and he acknowledged the issues with Huber but refused to take any action against Sergeant Huber for his false statements about Plaintiff's character, work performance, and the violations of the agency policies or to correct Plaintiff's record with the federal agencies to which Plaintiff had applied thus ratifying Huber's

4

conduct. Additionally, Huber has continued to make false statements about Plaintiff, now known to Defendant Sheriff, who has allowed Huber to act as the final policymaker for the Sheriff regarding giving background information to Plaintiff's prospective employers.

15.   Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## COMMON LAW NEGLIGENCE
### (Against Defendant SHERIFF)

16.   Paragraphs 1 through 15 are re-alleged and incorporated herein by reference.

17.   This count sets forth a claim against Defendant SHERIFF for common law negligence. Defendant SHERIFF knew or should have known that Plaintiff was within a zone of risk related to contact with its agents/employees.

18.   Defendant SHERIFF owed a duty of care to Plaintiff due to truthfully convey information to prospective employers due to the nature of the relationship between Plaintiff and Defendant SHERIFF and/or Defendant SHERIFF had a special relationship with Plaintiff and, consequently, a duty of care was attendant thereto. Alternatively, legal duties devolved upon Defendant SHERIFF because Plaintiff was in the foreseeable zone of risk to be harmed by the actions thereof.

19.    Defendant SHERIFF breached his duty to truthfully convey information to Plaintiff's prospective employers, which it utterly failed to do and/or to ensure that his employees/agents, truthfully imparted information about former employees to prospective employers.

20.    The actions of Defendant SHERIFF and a complained of herein were "operational" functions, i.e., functions that were not necessary to or inherent in policymaking or planning, that merely reflected secondary decisions as to how policies or plans were to be implemented.

21.    As a direct and proximate result of the above unlawful acts and omissions, Plaintiff sustained economic damages, including without limitation lost income, emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience and hurt, all because of the actions of Defendant SHERIFF and is therefore entitled to compensatory damages. Plaintiff. These damages occurred in the past, at present and are certain to occur in the future.

## COUNT II
## FOURTEENTH AMENDMENT—PROCEDURAL DUE PROCESS AGAINST SCSO

22.    Plaintiff re-alleges and incorporates Paragraphs 1-15 as if fully set forth herein.

23. This is an action against Defendant SCSO for violation of Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, brought pursuant to 42 U.S.C. § 1983.

24. At all relevant times, Plaintiff possessed a constitutionally protected liberty and/or property interest in public employment and a professional license, that could not be deprived without due process of law.

25. Defendant SCSO, through its policies, customs, practices, and/or acts of final policymaker Huber, and then the Sheriff through the ratification of Huber's actions, through trickery and sabotage, deprived Plaintiff of this protected interest without providing constitutionally required procedural protections, including all hearings, reviews, or appeals mandated by the United States Constitution, federal or state law, regulation, contract, or official policy.

26. Defendant SCSO failed to provide and/or interfered with post-deprivation proceedings to which Plaintiff was entitled by law, regulation, contract, or policy, including but not limited to review by a civil service commission, career service board, or comparable tribunal.

27. Specifically but without limitation, Defendant interfered with Plaintiff's ability to pursue his due process protected Career Service Appeals Board hearing or other avenues of redress to challenge the false and defamatory statements Huber has made about him to third parties, thus impairing Plaintiff's opportunity to

7

become employed. Moreover, after notice of the Defendant Sheriff of Huber's actions in sabotaging Plaintiff's employment, Defendant Sheriff allowed Huber to continue, failing to intervene and ratifying Huber's conduct.

28.    Defendant SCSO is liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), because the deprivation of Plaintiff's procedural due process rights was the result of one or more of the following:

a.    An official policy by Defendant's final policymaker, the Sheriff;

b.    A failure to train, supervise, or discipline employees in providing constitutionally adequate notice, hearing, and review procedures;

c.    A final policymaker's decision to deprive Plaintiff of protected interests without due process;

d.    Ratification by final policymaker KURT A. HOFFMAN, in his official capacity as SHERIFF, SARASOTA COUNTY, FLORIDA of the deprivation and the basis for it; or

e.    Delegation of final policymaking authority to Huber, who carried out the acts described herein with final, unreviewed discretion.

29.    Defendant SCSO, through its final policymaker, Kurt Hoffman and/or Huber, acted with deliberate indifference to the known or obvious consequence that failing to implement or follow constitutionally required procedures would result in the deprivation of protected interests.

30.    As a direct and proximate result of Defendant SCSO's actions, Plaintiff has suffered emotional distress, lost wages and other remuneration, reputational harm, mental pain and suffering, loss of liberty, legal expenses, and other compensable injuries, both tangible and intangible. Plaintiff is entitled to recover damages, including attorney's fees under 42 U.S.C. § 1988. These damages have occurred in the past, are occurring at present and will continue in the future.

## COUNT III
## FIRST AMENDMENT RETALIATION
### (against Defendant Sheriff)

31.    Paragraphs 1 through 15 are re-alleged and incorporated herein by reference.

32.    This count sets forth a claim against Defendant Sheriff in his official capacity as Sheriff, Sarasota County, for First Amendment retaliation and is brought through 42 U.S.C. §1983.

33.    Defendant took actions in violation of Plaintiff's rights under the First Amendment of the United States Constitution. Defendant Sheriff and Huber were the official policymakers for Defendant Sheriff. Defendant Sheriff is a person under applicable law.

34.    These violations were of the type and character as to which any reasonable person or institution would be aware.

9

35. Plaintiff's rights to freedom of speech regarding Huber's conduct on duty are protected as matters of public concern.

36. Citizens like Plaintiff have the right to engage in First Amendment activities without the fear of reprisal.

37. Plaintiff engaged in constitutionally protected activity by reporting drinking and associated behavior about Huber, thus reporting and speaking on matters of public concern.

38. After engaging in this protected activity, Plaintiff was the victim of retaliatory actions as set forth in part above, including without limitation the false and malicious statements made about Plaintiff to prospective employers resulting in Plaintiff not being hired.

39. Defendant, in his official capacity as Sheriff, and through his delegated final policymaker, Huber, infringed on Plaintiff's constitutionally protected interests under the First Amendment by taking adverse actions against him in retaliation for his protected activity including but not limited to making false statements to third parties about Plaintiff resulting in damage to him.

40. Defendant's actions against Plaintiff constituted the type of retaliatory conduct that would deter a person of ordinary sensibilities from exercising his or her First Amendment rights.

10

41. Plaintiff's protected activity was substantial or motivating factor in the adverse actions taken against her and her business.

42. The conduct engaged in by Defendant Huffman, in his official capacity as Sheriff, was in callous and willful disregard of Plaintiff's constitutional rights.

43. Defendant Huber, in his official capacity as Sheriff, was a final policymaker in the decisions to take adverse actions against Plaintiffs after Plaintiff Hampton engaged in protected First Amendment activity and is a person under the laws applicable to this action.

44. At all times pertinent hereto, Defendant Sheriff in his official capacity as Sheriff, acted under color of state law when it made the decisions and/or participated in the adverse actions against Plaintiff. So too, did Huber, as the delegated final policymaker.

45. Defendant, in his official capacity as Sheriff, took actions that directly resulted in the violations of Plaintiff's constitutional rights and censored speech he disfavored.

46. As a direct and proximate cause of Defendant's actions, taken in his official capacity as Sheriff, set forth in part above, Plaintiffs have been damaged, including but not limited to emotional pain and suffering, lost wages, other tangible and intangible damages, and any other compensatory damages allowed by law as well as injunctive relief. Plaintiff is entitled to other equitable actions attendant

11

thereto including without limitation attorney's fees and costs under 42 U.S.C. § 1988.

## COUNT IV
## FIRST AMENDMENT RETALIATION
### (against Defendant Huber in his individual capacity)

47. Paragraphs 1 through 15 are re-alleged and incorporated herein by reference.

48. This count sets forth a claim against Defendant Huber in his individual capacity.

49. Defendant took actions in violation of Plaintiff's rights under the First Amendment of the United States Constitution.

50. These violations were of the type and character as to which any reasonable person or institution would be aware.

51. Plaintiff's rights to freedom of political expression, association, participation, and belief were violated.

52. Citizens like Plaintiff have the right to engage in First Amendment activities without the fear of reprisal.

53. Plaintiff engaged in constitutionally protected activity by speaking on matters of public concern as described in part above. Plaintiff's rights under the First Amendment were clearly established at the time of the actions taken against him by Huber.

12

54.     After engaging in this protected activity, Plaintiff was the victim of retaliatory actions as set forth in part above.

55.     Defendant Huber, in his individual capacity, infringed on Plaintiff's constitutionally protected interests under the First Amendment by taking adverse actions against him in retaliation for his protected activity.

56.     Defendant's actions against Plaintiff constituted the type of retaliatory conduct that would deter a person of ordinary sensibilities from exercising his or her First Amendment rights.

57.     Plaintiff's protected activity was substantial or motivating factor in the adverse actions taken against her.

58.     The conduct engaged in by Defendant Huber, in his individual capacity, was in callous and willful disregard of Plaintiff's constitutional rights.

59.     Defendant Huber, in his individual capacity, personally made false statements to third parties to interfere with Plaintiff obtaining employment, naming with the federal government. Defendant is a person under the laws applicable to this action.

60.     At all times pertinent hereto, Defendant acted under color of state law when he made the decisions and/or participated in the adverse actions against Plaintiff.

61.    As a direct and proximate cause of Defendant's conduct set forth in part above, Plaintiff has been damaged, including but not limited to emotional pain and suffering, lost wages, other tangible and intangible damages, and any other compensatory damages allowed by law as well as injunctive relief. Plaintiff is entitled to other equitable actions attendant thereto including without limitation attorney's fees and costs under 42 U.S.C. § 1988.  Plaintiff is entitled to punitive damages under this Count.

## COUNT V
## TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP AGAINST HUBER

62.    Paragraphs 1-15 are re-alleged and incorporated.

63.    This count set forth a claim of tortious interference with an advantageous business relationship. For purposes of this count, Defendant Huber acted outside the course and scope of his business relationship with the Sheriff.

64.    Plaintiff had, at all times pertinent hereto, a business relationship with the federal government.

65.    Defendant knew of Plaintiff's current and/or prospective business relationships, and intentionally and unjustifiably interfered with these relationships. Defendant acted with an ulterior purpose and without the honest belief that his actions would benefit his employer.

14

66.     Defendant used false statements and unjustified actions described in part above to detrimentally affect Plaintiff and his business and employment relationship.

67.     The actions by Defendant were malicious and were intended to harm Plaintiff in his business relationships. Defendant's actions did, in fact, harm Plaintiff's relationships with third parties. Defendant was not a party to the business relationships that have suffered and/or been destroyed by his actions.

68.     As a direct and proximate result of the actions and inactions of Defendant described in part above, Plaintiff has incurred damages including without limitation: Plaintiff's reputation has been substantially damaged and she has been embarrassed; Plaintiff has incurred significant emotional distress and mental pain and suffering, which is likely to continue and increase in the future; Plaintiff has expended and will expend hundreds of hours attempting to restore his good reputation by explaining the accusations and rumors about her to individuals who are concerned about these charges; Plaintiff has lost opportunities, income, benefits, and prestige; Plaintiff has lost business opportunities of various kinds; Plaintiff has lost the capacity for the enjoyment of life; Plaintiff has lost his good standing in the community. Plaintiff has suffered these damages in the past, is suffering them at present, and will likely continue suffering them into the future. Plaintiff is entitled to equitable/injunctive relief under this count.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

(a)   that process issue and this Court take jurisdiction over this case;

(b)   that this Court grant equitable relief against Defendants under the applicable counts set forth above, mandating Defendants' obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)   enter judgment against Defendants and for Plaintiff awarding damages to Plaintiff from Defendants for Defendant's violations of law enumerated herein;

(d)   enter judgment against Defendants and for Plaintiff permanently enjoining Defendants from future violations of the state and federal laws enumerated herein;

(e)   enter judgment against Defendants and for Plaintiff awarding Plaintiff attorney's fees and costs; and

(f)   grant such other further relief as being just and proper under the circumstances.

16

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demand a trial by jury on all issues set forth herein which are so triable.

Dated this 7th day of April, 2026.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
Marie@mattoxlaw.com
Secondary emails:
marlene@mattoxlaw.com
michelle@mattoxlaw.com
discovery@mattoxlaw.com

ATTORNEYS FOR PLAINTIFF