**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JAMES CROSBY,

Plaintiff,

v.

Case No. 8:26-cv-1003-TPB-NHA

KURT A. HOFFMAN, in his official capacity as SHERIFF OF SARASOTA COUNTY, FLORIDA, and
SCOTT HUBER, individually,

Defendants.

_________________________________________ /

**ORDER GRANTING IN PART "DEFENDANTS' MOTION TO DISMISS COUNTS II THROUGH V OF PLAINTIFF'S AMENDED COMPLAINT"**

This matter comes before the Court on "Defendants' Motion to Dismiss Counts II through V of Plaintiff's Amended Complaint and Incorporated Memorandum of Law," filed on June 2, 2026. (Doc. 20). Plaintiff James Crosby filed a response in opposition on June 30, 2026. (Doc. 25). After reviewing the motion, response, court file, and record, the Court finds as follows:

**Background**[1]

This case arises from bad employment references Plaintiff received after leaving his employment with the Sarasota County Sheriff's Office. Plaintiff James Crosby is a former deputy and detective with the Sheriff's Office. During the course of his

---

[1] The Court accepts as true the facts alleged in Plaintiffs' amended complaint for purposes of ruling on the pending motion to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."). The Court is not required to accept as true any legal conclusions couched as factual allegations. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

employment from April 2015 until around May 2020, Defendant Sergeant Scott Huber was one of Plaintiff's supervisors, and Plaintiff ultimately worked under the authority of Defendant Sheriff Kurt A. Hoffman.

Sometime from early 2019 to the middle of 2020, Plaintiff reported to his upper-level supervisors (believed to be Sergeant Gioveowski and Lieutenant Montebollo) his belief that Huber was either drinking on the job or reporting to work hungover on multiple occasions, which adversely affected Huber's ability to perform job duties. Despite these reports, Plaintiff alleges there was no meaningful investigation or corrective action.

Plaintiff further alleges that in April or May 2020, Huber falsely informed patrol personnel that Plaintiff wanted to transfer back into patrol operations although Plaintiff had repeatedly stated he was resigning from the agency. Plaintiff claims that he reported to the unnamed patrol lieutenant that Huber was attempting to conceal Plaintiff's impending resignation and create the appearance that Plaintiff voluntarily sought the transfer to patrol operations. Plaintiff alleges that during this time period, he verbally expressed his concerns about Huber lying about the transfer to "supervisory personnel" and repeatedly clarified that he did not voluntarily seek the transfer and intended to resign.

Plaintiff left the Sheriff's Office in May 2020 due to his plans to further his education and care for his son, who had been diagnosed with a brain tumor requiring extensive care. Plaintiff alleges that prior to his departure, Huber did not know that Plaintiff had reported his possible intoxication and impairment on duty, but that after his departure, Plaintiff was told that officials had informed Huber of Plaintiff's

reports. At the time of Plaintiff's resignation, Huber was aware about Plaintiff's reports concerning Huber's statements about Plaintiff's transfer because Huber was present when Plaintiff reported Huber's lie to a narcotics lieutenant (believed to be Montebollo) and sergeant (believed to be Gioveowski).

Following Plaintiff's departure, Plaintiff alleges that Huber became hostile and made false and derogatory statements concerning Plaintiff to prospective employers during background investigations. Specifically, Plaintiff alleges that from January 2021 through July 2024, Plaintiff applied for several highly competitive federal law enforcement and intelligence positions, including positions with the National Security Agency and Diplomatic Security Service. Plaintiff alleges that during the NSA hiring process, he received a conditional offer of employment and completed extensive testing and evaluation over approximately one and a half to two years, but that during the final background investigation process, Sergeant Huber provided false and defamatory information to federal background investigators with NSA and DSS concerning Plaintiff's work history and character, including that Plaintiff did not work well with others, missed meetings, failed to give full effort in his work performance, and otherwise lacked professionalism and reliability. Plaintiff alleges that these statements were made in retaliation for Plaintiff's prior reports concerning Huber.

On May 12, 2022, Plaintiff brought these concerns to the Sheriff and requested that the allegedly false statements concerning Plaintiff's character and work performance be corrected with the federal agencies. On May 23, 2022, the Sheriff informed Plaintiff by email that he had spoken with the individuals who provided statements during the background investigation process and that they affirmatively

stood by those statements. Sheriff Hoffman further advised Plaintiff that he would not intervene in the matter.

On April 7, 2026, Plaintiff filed a five-count complaint against Defendants. On May 19, 2026, Plaintiff filed an amended five-count complaint asserting claims for: negligence against the Sheriff (Count I), violation of the due process clause of the Fourteenth Amendment against the Sheriff (Count II), First Amendment retaliation against the Sheriff (Count III), First Amendment retaliation against Huber (Count IV), and tortious interference with a business relationship (Count V). On June 2, 2026, Defendants filed an answer as to Count I, and a motion to dismiss as to Counts II through V for failure to state a claim.

## Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 570.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995). Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232,

236 (1974)). "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.).

## Analysis

### *Count II – Procedural Due Process Fourteenth Amendment Claim Against Sheriff*

Defendants move to dismiss Count II for failure to state a claim, arguing that Plaintiff has not stated a viable due process claim. The Court agrees, though not for the precise reasons articulated by Defendants. Even accepting Plaintiff's allegations as true, Plaintiff fails to state a claim under § 1983 for constitutional deprivation of liberty or property without due process of law.

"To establish a procedural due process claim, a plaintiff must first show the deprivation of a liberty or property interest protected by the Due Process Clause." *Cypress Ins. Co. v. Clark*, 144 F.3d 1435, 1436 (11th Cir. 1998) (citing *Board of Regents v. Roth*, 408 U.S. 564 (1972)). It is well-established that in defamation cases brought under § 1983, such as this, "allegations of injury to reputation alone do not support a section 1983 claim for violation of due process, and therefore must be accompanied by a constitutionally recognized injury." *Id*. (citing *Paul v. Davis*, 424 U.S. 693, 712 (1976)). This standard – known as the "stigma-plus standard" – means that a plaintiff must "show that the government official's conduct deprived the plaintiff of a previously recognized property or liberty interest in addition to damaging the plaintiff's reputation." *Id*. (citing *Paul*, 424 U.S. at 712).

Plaintiff does not plausibly allege the deprivation of a constitutionally protected property or liberty interest here. The instant case bears similarities to *Siegert v. Gilley*, 500 U.S. 226 (1991), in which the United States Supreme Court held that a psychologist who lost his job at an army hospital due to an allegedly defamatory letter written by his prior supervisor could not allege the deprivation of a constitutionally protected right. As the Supreme Court explained:

> The statements contained in the [defamatory] letter would undoubtedly damage the reputation of one in his position, and impair his future employment prospects. But the plaintiff in *Paul v. Davis* similarly alleged serious impairment of his future employment opportunities as well as other harm. Most defamation plaintiffs attempt to show some sort of special damage and out-of-pocket loss which flows from the injury to their reputation. But so long as such damage flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but it is not recoverable in a *Bivens* action.

*Id.* at 234. To put it plainly, "Section 1983 did not make every tort committed by a state official a violation of constitutional rights." *Cypress Ins. Co.*, 144 F.3d at 1438. Even assuming that Huber made false statements, and the Sheriff later approved of or ratified those statements, such conduct may support one or more state law tort claims. But it does not establish or support the deprivation of a constitutionally protected liberty or property interest for purposes of the Due Process Clause of the Fourteenth Amendment.

Plaintiff alleges only reputational harm and the resulting loss of prospective employment opportunities. Under *Paul* and *Siegert*, reputational injury – even when accompanied by diminished future employment prospects resulting form that reputational injury – does not constitute the deprivation of a constitutionally protected

liberty interest. Consequently, Count II is due to be dismissed.[2] Although the Court has serious reservations as to whether Plaintiff can cure these deficiencies, in an abundance of caution, the Court will grant leave to amend, if Plaintiff may do so in good faith.

***Count III – First Amendment Retaliation Against Sheriff***

Count III asserts a First Amendment retaliation claim against Sheriff Hoffman in his official capacity. Defendants argue that the Sheriff cannot be liable under *Monell*. Under *Monell*, "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief . . . pursuant to a governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978). Municipalities can only be held liable for "action pursuant to official municipal policy of some nature caused a constitutional tort[;]" a municipality cannot be liable under § 1983 on a respondeat superior theory simply because it employs a tortfeasor. *Id*. at 691.

Consequently, "to impose § 1983 liability on a local government body, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the entity had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Scott v. Miami-Dade Cnty.*, No. 13-CIV-23013-GAYLES, 2016 WL 9446132, at *3 (S.D. Fla. Dec. 13, 2016). "A plaintiff

[2] Because Plaintiff has not plausibly alleged the deprivation of a protected liberty or property interest, he has not established a constitutional entitlement to procedural due process. As such, the Court need not determine whether the process afforded – including any alleged entitlement to a name-clearing hearing – was constitutionally adequate.

seeking to impose Section 1983 liability on a municipality for the actions of a police officer must identify an official policy or custom constituting the 'moving force' behind the constitutional violation." *Artuble v. Colonial Bank Grp., Inc.*, No. 8:08-cv-179-T-23-MAP, 2008 WL 3411785, at *8 (M.D. Fla. Aug. 8, 2008) (citing *Monell*, 436 U.S. at 694; *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998)).

To demonstrate a policy or custom, "it is generally necessary to show a persistent and wide-spread practice; random acts or isolated incidents are insufficient." *Scott*, 2016 WL 9446132, at *4. The requisite causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Christmas v. Harris Cnty., Ga.*, 51 F.4th 1348, 1355 (11th Cir. 2022) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)). "Alternatively, the causal connection may be established when a supervisor's custom or policy results in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (internal quotation and citation omitted).

Here, Plaintiff does not identify any formal policy authorizing retaliatory employment references. Nor does he allege similar incidents involving other current or former employees. Instead, the amended complaint concerns only the references allegedly supplied about Plaintiff during his own applications for federal employment. Those allegations describe a course of conduct directed at one individual, not a persistent and widespread practice sufficient to establish a municipal custom. *See Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 820 (11th Cir. 2017).

Plaintiff alternatively relies on theories of delegation and ratification to attempt to establish municipal liability under *Monell*. Neither is plausibly alleged. The amended complaint asserts that Huber possessed "delegated authority" and "unbridled discretion" to communicate with prospective employers because his statements were not routinely supervised or reviewed. But authority to exercise discretion in performing an assigned function is not equivalent to authority to establish final governmental policy. The amended complaint does not allege facts showing that state or local law vested Huber, a sergeant, with final policymaking authority over the Sheriff's Office's employment-reference policies. At most, Plaintiff alleges that Huber exercised operational discretion when responding to background investigators.

The ratification allegations are likewise insufficient. Plaintiff alleges that, after he complained in May 2022, Sheriff Hoffman spoke with the individuals who had knowledge of the challenged information, advised Plaintiff that those individuals stood by their statements, and declined to intervene. Even accepting those allegations as true, they do not plausibly show that Sheriff Hoffman knowingly approved Huber's alleged retaliatory motive or adopted that motive as official policy. An after-the-fact refusal to retract or overrule a subordinate's completed act, without facts showing conscious approval of the unconstitutional basis for that act, does not itself transform the subordinate's conduct into municipal policy.

The amended complaint also does not allege that Sheriff Hoffman even knew of Plaintiff's protected reports when Huber initially communicated with prospective employers. And although Sheriff Hoffman allegedly learned of Plaintiff's complaint in May 2022, Plaintiff does not allege that Sheriff Hoffman then directed Huber to

provide further retaliatory references, personally communicated false information, or made a final policymaking decision that caused an additional First Amendment injury.

As such, Plaintiff has not plausibly alleged that the alleged retaliation resulted from an official policy, widespread custom, or decision attributable to Sheriff Hoffman. Count III is therefore due to be dismissed. In an abundance of caution, the Court will grant leave to amend, if Plaintiff may do so in good faith.

***Count IV – First Amendment Retaliation Against Huber***

Defendants argue that Count IV fails to state a First Amendment retaliation claim against Huber. Although the issue presents a closer question than Counts II and III, the Court ultimately agrees that Count IV is inadequately pleaded.

Plaintiff alleges that, after leaving the Sheriff's Office, Huber learned that Plaintiff had reported his alleged misconduct to upper-level supervisors and thereafter provided unfavorable employment references to Plaintiff's prospective employers. These allegations, however, are insufficient to plausibly establish that Huber's challenged employment references were motivated by Plaintiff's protected speech.[3] Aside from Plaintiff's conclusory assertions that Huber's statements were "false," "retaliatory," and "malicious," the amended complaint alleges no nonconclusory facts from which the Court could reasonably infer that Plaintiff's protected speech, rather

[3] The Court notes that the First Amendment does not protect speech when made pursuant to official job duties and responsibilities. *Garcetti v. Ceballos*, 547 U.S. 410, 424 (2006). Here, Plaintiff's speech occurred during employment, it was made internally, it went up the chain of command, it concerned workplace misconduct, and it related to matters that Plaintiff learned through his employment. However, the Court assumes, for purposes of the motion to dismiss and at this stage of the proceedings, that Plaintiff's reports concerning Huber constitute protected speech. This issue may merit further analysis, but that is a question for another day.

than Huber's own assessment of Plaintiff's work performance, was the substantial or motivating factor underlying the challenged employment references.

Although Plaintiff alleges that the challenged employment references were inconsistent with prior performance valuations from Huber, those allegations, standing alone, do not plausibly establish a retaliatory motive. Nor does the amended complaint allege sufficient facts to bridge the inferential gap between Plaintiff's speech and Huber's subsequent employment references. For example, Plaintiff's failure to allege with any more specificity when Huber learned of the reports does not permit the Court to assess the temporal relationship between Huber's knowledge of the protected activity and the bad employment references. Absent additional factual allegations regarding the chronology of events or other facts supporting retaliatory animus, the amended complaint asks the Court to infer retaliation based largely upon Plaintiff's characterization of Huber's conduct rather than well-pleaded factual allegations.

Plaintiff therefore fails to plausibly allege the requisite causal connection between his protected speech and the alleged adverse action. Count IV is therefore due to be dismissed. In an abundance of caution, the Court will grant leave to amend, if Plaintiff may do so in good faith.

***Count V – Tortious Interference with a Business Relationship Against Huber***

The Court declines to address Defendants' arguments as to Count V at this time because the Court is granting leave to amend as to the federal claims. Should Plaintiff file an amended complaint, Defendants may renew these arguments. The Court notes that in the event that Plaintiff is unable to sufficiently allege a federal claim, it intends to decline to exercise supplemental jurisdiction over Plaintiff's state law

claims pursuant to 28 U.S.C. § 1367(c). Arguments relating to the state law claims might be better addressed by a state court judge should this case end up in a state court.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

1. "Defendants' Motion to Dismiss Counts II through V of Plaintiff's Amended Complaint and Incorporated Memorandum of Law" (Doc. 20) is hereby **GRANTED IN PART**, as set forth herein.

2. Plaintiff is directed to file an amended complaint on or before August 6, 2026. Even if Plaintiff does not intend to replead any dismissed claim, Plaintiff shall file an amended complaint omitting the dismissed claims and identifying the claims that remain so that there is a single operative pleading. Failure to do so will result in this Order becoming a final judgment.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 23rd day of July, 2026.

TOM BARBER
UNITED STATES DISTRICT JUDGE