**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JAMES CROSBY,

Plaintiff,

v. Case No. 8:26-cv-1003-TPB-NHA

KURT A. HOFFMAN, in his official capacity as SHERIFF OF SARASOTA COUNTY, FLORIDA, and SCOTT HUBER, individually,

Defendants.
_________________________________________ /

**ORDER GRANTING IN PART AND DENYING IN PART "DEFENDANTS' MOTION TO STRIKE COUNT I AND TO DISMISS COUNTS II THROUGH IV OF PLAINTIFF'S SECOND AMENDED COMPLAINT"**

This matter comes before the Court on "Defendants' Motion to Strike Count I and to Dismiss Counts II Through IV of Plaintiff's Second Amended Complaint," filed on August 20, 2026. (Doc. 31). Plaintiff James Crosby filed a response in opposition on September 10, 2026. (Doc. 34). After reviewing the motion, response, court file, and record, the Court finds as follows:

**Background**[1]

This case arises from unfavorable employment references Plaintiff received after leaving his employment with the Sarasota County Sheriff's Office. Plaintiff James Crosby is a former deputy and detective with the Sheriff's Office. During the

[1] The Court accepts as true the facts alleged in Plaintiffs' amended complaint for purposes of ruling on the pending motion to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."). The Court is not required to accept as true any legal conclusions couched as factual allegations. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

course of his employment from April 2015 until around May 2020, Defendant Sergeant Scott Huber was one of Plaintiff's supervisors, and Plaintiff ultimately worked under the authority of Defendant Sheriff Kurt A. Hoffman.

Sometime between early 2019 to the middle of 2020, Plaintiff reported to his upper-level supervisors (believed to be Sergeant Gioveowski and Lieutenant Montebollo) his belief that Huber was either drinking on the job or reporting to work hungover on multiple occasions, which adversely affected Huber's ability to perform his job duties. Plaintiff alleges that, despite these reports, there was no meaningful investigation or corrective action.

Plaintiff further alleges that in April or May 2020, Huber falsely informed patrol personnel that Plaintiff wanted to transfer back into patrol operations although Plaintiff had repeatedly stated he was resigning from the agency. Plaintiff claims that he reported to an unnamed patrol lieutenant that Huber was attempting to conceal Plaintiff's impending resignation and create the appearance that Plaintiff voluntarily sought the transfer to patrol operations. Plaintiff alleges that during this time period, he verbally expressed his concerns about Huber lying about the transfer to "supervisory personnel" and repeatedly clarified that he did not voluntarily seek the transfer and that he intended to resign.

Plaintiff left the Sheriff's Office in May 2020 due to his plans to further his education and care for his son, who had been diagnosed with a brain tumor requiring extensive care. Plaintiff alleges that prior to his departure, Huber did not know that Plaintiff had reported his possible intoxication and impairment on duty, but that within weeks after Plaintiff's departure, officials informed Huber of Plaintiff's reports,

such that Huber knew of the reports by mid-2020. At the time of Plaintiff's resignation, Huber was aware of Plaintiff's reports concerning Huber's statements about Plaintiff's transfer because Huber was present when Plaintiff reported Huber's statements to a narcotics lieutenant (believed to be Montebollo) and sergeant (believed to be Gioveowski).

Following Plaintiff's departure, Plaintiff alleges, Huber became hostile and made false and derogatory statements concerning Plaintiff to prospective employers during background investigations. Specifically, Plaintiff alleges that from January 2021 through July 2024, Plaintiff applied for several highly competitive federal law enforcement and intelligence positions, including positions with the National Security Agency and Diplomatic Security Service. Plaintiff alleges that during the NSA hiring process, he received a conditional offer of employment and completed extensive testing and evaluation over approximately one and a half to two years, passed a polygraph examination, and progressed to salary negotiations. But during the final background investigation process, Sergeant Huber provided false and defamatory information to federal background investigators with NSA and DSS concerning Plaintiff's work history and character, including that Plaintiff did not work well with others, missed meetings, failed to give full effort in his work performance, and otherwise lacked professionalism and reliability. Plaintiff alleges that these statements were made in retaliation for Plaintiff's prior reports concerning Huber.

On May 12, 2022, Plaintiff brought these concerns to the Sheriff and requested that the allegedly false statements concerning Plaintiff's character and work performance be corrected with the federal agencies. On May 23, 2022, the Sheriff

informed Plaintiff by email that he had spoken with the individuals who provided statements during the background investigation process and that they affirmatively stood by those statements. Sheriff Hoffman further advised Plaintiff that he would not intervene in the matter.

On April 7, 2026, Plaintiff filed a five-count complaint against Defendants. On May 19, 2026, Plaintiff filed an amended complaint asserting claims for: negligence against the Sheriff (Count I), violation of the due process clause of the Fourteenth Amendment against the Sheriff (Count II), First Amendment retaliation against the Sheriff (Count III), First Amendment retaliation against Huber (Count IV), and tortious interference with a business relationship (Count V). On June 2, 2026, Defendants filed an answer as to Count I, and a motion to dismiss as to Counts II through V for failure to state a claim.

On July 23, 2026, the Court entered an Order granting in part Defendants' motion to dismiss. (Doc. 26). The Court dismissed Plaintiff's federal claims with leave to amend and directed Plaintiff to file a single operative pleading identifying the claims that remained. On August 6, 2026, Plaintiff filed his second amended complaint, asserting claims for negligence against the Sheriff (Count I), First Amendment retaliation against the Sheriff (Count II), First Amendment retaliation against Huber (Count III), and tortious interference with a business relationship against Huber (Count IV). (Doc. 30). Defendants now move to strike Count I and dismiss Counts II through IV for failure to state a claim. (Doc. 31).

## Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 570.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995). Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.).

## Analysis

### *Count I – Common Law Negligence Against Sheriff*

Defendants first move to strike Count I, arguing that Plaintiff amended the negligence claim without leave of Court or Defendants' consent. The Court agrees that Plaintiff exceeded the scope of the leave to amend previously granted but concludes that striking Count I is unnecessary under the circumstances.

The Court's July 23, 2026, Order dismissed Counts II through IV of the amended complaint and granted Plaintiff leave to amend those claims. Count I was not challenged or dismissed, and the Court did not grant Plaintiff unrestricted leave to substantively amend that claim. Although the Court directed Plaintiff to file a single operative pleading identifying all remaining claims, that directive did not authorize substantive amendments to a claim that remained pending.

Plaintiff alternatively requests leave to amend Count I *nunc pro tunc*. Because Defendants have identified no meaningful prejudice resulting from the amendments, and in the interest of avoiding yet another amended pleading, the Court will grant that request. *See* Fed. R. Civ. P. 15(a)(2). Defendants' motion to strike Count I is therefore denied.

***Count II – First Amendment Retaliation Against Sheriff***

Count II asserts a First Amendment retaliation claim against Sheriff Hoffman in his official capacity. Defendants argue that Plaintiff has again failed to plausibly allege municipal liability under *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). The Court agrees.

As explained in the Court's prior Order, municipalities may only be held liable for "action pursuant to official municipal policy of some nature [that] caused a constitutional tort;" a municipality cannot be liable under § 1983 on a respondeat superior theory simply because it employs a tortfeasor. *Monell*, 436 U.S. at 691. A plaintiff seeking to impose § 1983 liability must therefore identify an official policy, custom, or decision attributable to a final policymaker that caused the alleged constitutional violation.

In the amended complaint, Plaintiff no longer relies on a widespread custom or Huber's alleged delegated authority to support his retaliation claim. Instead, he alleges that Sheriff Hoffman, as the final policymaker for the Sheriff's Office, affirmatively adopted and ratified Huber's retaliatory conduct. Specifically, Plaintiff alleges that when he contacted Sheriff Hoffman in May 2022, Plaintiff informed the Sheriff that Huber's statements were both false and retaliatory. Plaintiff alleges that the Sheriff thereafter spoke with the individuals who had provided the statements, informed Plaintiff that those individuals stood by their statements, and declined to intervene. Based on these facts, Plaintiff alleges that the Sheriff "knew" that Huber's statements were false and retaliatory and "consciously and affirmatively approved and adopted both the statements and the retaliatory basis for them."

These new allegations do not cure the deficiency previously identified by the Court. As the Court explained in its prior Order, an after-the-fact refusal to retract or overrule a subordinate's completed act, without facts showing conscious approval of the unconstitutional basis for that act, does not itself transform the subordinate's conduct into municipal policy. Plaintiff now alleges that he specifically told Sheriff Hoffman that Huber's statements were retaliatory. But Plaintiff's accusation of retaliation does not plausibly establish that the Sheriff knew the accusation was true. Nor does the Sheriff's decision not to intervene after speaking with the individuals involved plausibly establish that he consciously approved or adopted Huber's alleged retaliatory motive.

Plaintiff attempts to avoid this problem by alleging that his federal background investigations continued through at least July 2024 and that the Sheriff's May 2022

decision therefore "governed and authorized" the Sheriff's Office's continuing communications with federal investigators. But the second amended complaint does not identify any subsequent retaliatory statement or communication made by Huber or another Sheriff's Office employee pursuant to the Sheriff's May 2022 decision. Nor does Plaintiff allege that Sheriff Hoffman directed Huber to provide further retaliatory references, personally communicated false information to the federal agencies, or otherwise caused an additional First Amendment injury.

Plaintiff has therefore again failed to plausibly allege retaliation resulting from an official policy or decision attributable to Sheriff Hoffman. Count II is due to be dismissed. Because Plaintiff has already been afforded an opportunity to amend after the Court specifically identified the deficiencies in his ratification theory, and the second amended complaint fails to cure those deficiencies, further amendment is unwarranted. Count II is dismissed with prejudice.

***Count III – First Amendment Retaliation Against Huber***

Defendants next argue that Count III fails to state a First Amendment retaliation claim against Huber because Plaintiff has again failed to plausibly allege a causal connection between his protected speech and Huber's alleged retaliatory conduct.

In its prior Order, the Court concluded that Plaintiff failed to allege sufficient facts to bridge the inferential gap between Plaintiff's speech and Huber's subsequent employment references. In particular, Plaintiff had failed to allege with sufficient specificity when Huber learned of Plaintiff's reports, preventing the Court from

assessing the temporal relationship between Huber's knowledge of the alleged protected activity and the unfavorable employment references.

The second amended complaint supplies the chronology previously missing. Plaintiff now alleges that Huber knew of Plaintiff's reports concerning the transfer at the time of Plaintiff's resignation because Huber was present when Plaintiff reported the matter to supervisory personnel. Plaintiff further alleges that, within weeks after Plaintiff's departure and by no later than mid-2020, officials within the Sheriff's Office informed Huber of Plaintiff's reports concerning Huber's suspected intoxication and impairment on duty. Plaintiff alleges that Huber thereafter became hostile toward him but had no meaningful opportunity to affect Plaintiff's employment interests until federal background investigators contacted Huber beginning in approximately 2021. Plaintiff also alleges that the negative information Huber subsequently provided to the federal investigators directly contradicted Huber's own contemporaneous performance evaluations of Plaintiff, which had reflected positive performance, professionalism, reliability, and teamwork. Taken together and accepted as true, these allegations are sufficient at the pleading stage to permit a reasonable inference that Plaintiff's protected speech was a substantial or motivating factor in Huber's alleged adverse conduct.[2]

---

[2] The Court notes, as it did previously, that the First Amendment does not protect speech made pursuant to an employee's official job duties and responsibilities. *See Garcetti v. Ceballos*, 547 U.S. 410, 424 (2006). Defendants, however, expressly decline to challenge the protected nature of Plaintiff's speech in the instant motion, based on Plaintiff's allegations that his reports were not part of his ordinary job duties. The Court therefore assumes for purposes of the instant motion, without deciding, that Plaintiff's reports constitute protected speech.

Defendants criticize Plaintiff's allegation, made on information and belief, that unidentified Sheriff's Office officials informed Huber of the reports concerning his suspected intoxication. But at this stage, the Court must accept Plaintiff's well-pleaded factual allegations as true and draw reasonable inferences in his favor. Whether Plaintiff can ultimately prove that Huber knew of the reports or acted with retaliatory motive is a question for a later stage of the proceedings.

Defendants' motion to dismiss Count III is denied.

***Count IV – Tortious Interference with Business Relationship Against Huber***

Finally, Defendants move to dismiss Plaintiff's tortious interference claim against Huber. Defendants principally argue that Plaintiff cannot establish the existence of an advantageous business relationship because he was merely a prospective applicant for federal employment.

Under Florida law, the elements of intentional interference with an advantageous business relationship are: "(1) the existence of a business relationship, (2) knowledge of the relationship on the part of the defendant, (3) an intentional and unjustified interference with the relationship by the defendant, and (4) damage to the plaintiff as a result of the breach of the relationship." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994) (quoting *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985)). Although the plaintiff must identify an actual business relationship with an identifiable person or entity, the relationship need not be evidenced by an enforceable contract. *Id.* at 814-15.

Plaintiff alleges more than a general hope of obtaining employment from an unidentified prospective employer. He alleges that the NSA extended him a

conditional offer of employment, that he completed extensive testing and evaluation over approximately one and a half to two years, passed a polygraph examination, progressed to salary negotiations, and reached the final background investigation stage. These allegations describe a concrete relationship with a specifically identified prospective employer.

Florida courts have recognized that a prospective employment relationship may support a tortious interference claim where the employer has decided to hire an applicant subject to a satisfactory reference. *See Nowik v. Mazda Motors of Am. (E.), Inc.*, 523 So. 2d 769, 770 (Fla. 1st DCA 1988). Consequently, Plaintiff's failure to allege that he had already entered into a final employment relationship with the NSA does not render his alleged relationship too speculative as a matter of law. Defendants' reliance on *Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.*, 687 So. 2d 821 (Fla. 1996), is unavailing because that case involved an alleged relationship with unidentified prospective customers rather than a concrete relationship with a specifically identified entity.

Defendants also assert, in a footnote, that Count IV is barred by Florida's single publication rule. *See Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002). Defendants do not meaningfully develop this argument or explain why the rule requires dismissal of Plaintiff's tortious interference claim under the facts alleged here. The Court declines to dismiss Count IV on this abbreviated argument.

Defendants' motion to dismiss Count IV is denied.

Accordingly, it is

**ORDERED, ADJUDGED, and DECREED:**

1. "Defendants' Motion to Strike Count I and to Dismiss Counts II Through IV of Plaintiff's Second Amended Complaint" (Doc. 31) is hereby **GRANTED IN PART** and **DENIED IN PART**, as set forth herein.
2. Defendants' motion to strike Count I is **DENIED**. To the extent necessary, Plaintiff's request for leave to amend Count I *nunc pro tunc* is **GRANTED**.
3. Defendants' motion to dismiss Count II is **GRANTED**. Count II is **DISMISSED WITH PREJUDICE**.
4. Defendants' motion to dismiss Counts III and IV is **DENIED**.
5. Defendants are directed to file an answer to the second amended complaint on or before November 4, 2026.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 21st day of October, 2026.

TOM BARBER
UNITED STATES DISTRICT JUDGE